IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIFFANY MICHELLE SMITH, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 19 C 7422 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| AMERICAN YOUTH HOSTELS, INC., ) | |
| a not-for-profit organization d/b/a ) | |
| HOSTELLING INTERNATIONAL USA., ) | |
| *et al*, ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Tiffany Michelle Smith ("Smith") brings this employment discrimination action against Defendants American Youth Hostels, Inc. ("AYH"), Hostelling International USA ("Hostelling"), and several of her former supervisors at a hostel in Chicago. She alleges race, color, and gender discrimination as well as harassment and hostile work environment in violation of Title VII and 42 U.S.C. § 1981.[1] Defendants now move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. For the reasons set forth below, the Motion to Dismiss (Dkt. 41) is granted in part and denied in part.

**I.     Rule 12(b)(1) Motion to Dismiss**

Defendants first move to dismiss on the grounds that the Court should judicially estop Plaintiff from bringing this case and because Plaintiff lacks standing. Defendant's Rule 12(b)(1) motion accepts as true the facts alleged in the complaint, so its challenge to Plaintiff's standing is facial rather than factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44

---

[1] The fist paragraph of the Second Amended Complaint also mentions state law claims for defamation and intentional infliction for emotional distress (IIED), but the Complaint does not contain defamation or IIED counts. Plaintiff's opposition to this Motion also does not even mention those claims. As such, the Court deems those claims and dismisses them with prejudice.

1

(7th Cir. 2009). On a facial challenge to subject matter jurisdiction, the Court must accept the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the plaintiff's favor, but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The Court can also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Smith's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The papers filed and orders entered in Smith's bankruptcy case are subject to judicial notice. *See Kimble v. Donahoe*, 511 Fed. App'x. 573, 575 n.2 (7th Cir. 2013). The following facts are set forth as favorably to Smith as permitted by those materials. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

    a.    **Background**[2]

American Youth Hostels terminated Plaintiff's employment on April 29, 2019. (Dkt. 40 ¶ 40.) On May 10, 2019, Plaintiff filed a *pro se* Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Northern District of Indiana. (Dkt. 42-1 at p. 2.) In her petition, she responded "no" to whether she had any "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." (*Id.* at p. 18.)

On July 26, 2019, Plaintiff filed a *pro se* EEOC charge related to her termination as well ongoing harassment and hostile work environment preceding her termination. (Dkt. 40 ¶ 6; Dkt. 27-1 at p. 2.) In response to the instant Motion to Dismiss, Plaintiff filed an affidavit[3] indicating

---

[2] The facts contained in this section are undisputed.
[3] The Court will consider the affidavit for purposes of reviewing the instant Motion because the affidavit is not inconsistent with the allegations of the Second Amended Complaint. *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (explaining that courts may consider facts alleged opposition to a motion to dismiss when evaluating the sufficiency of a complaint so long as they are consistent with the allegations in the complaint).

that she did not decide to file an EEOC charge until approximately July 20, 2019. (Dkt. 44-1 ¶¶ 6, 11.)

On July 30, 2019, the bankruptcy trustee held the mandatory § 341 meeting.[4] (Dkt. 44.) Plaintiff attended the meeting and did not inform the trustee of her pending EEOC charge. *See In re Tiffany Michelle Smith*, No. 19-21317-jra, Dkt. 14 (Bankr. N.D. Ind. Aug. 19, 2019) (Trustee's report listing $4,067.05 as debtor's only asset, which consisted of household items and a car). The record not does indicate if the trustee specifically asked Smith at the meeting whether she had any pending claims.

Smith received a right-to-sue letter from the EEOC on August 6, 2019. (Dkt. 40-1.)

The bankruptcy court discharged Plaintiff's debts totaling $22,557.90 on October 7, 2019, *In re Tiffany Michelle Smith*, No. 19-21317-jra, Dkt. 15, and discharged the trustee two days thereafter. *Id.* at Dkt. 16. The record does not indicate that Plaintiff ever informed the bankruptcy court or the trustee of her claim against Defendants.

Plaintiff filed this action on November 8, 2019. (Dkt. 1.) She now has counsel representing her in this action.

b.     Discussion

Defendants ask the Court to judicially estop Plaintiff from pursuing her claims here because she failed to disclose them to the bankruptcy trustee during the pendency of her bankruptcy action. Judicial estoppel is a common-law doctrine that prohibits a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The doctrine makes litigants "'choose one position

---

[4] Title 11 U.S.C. § 341 provides that the bankruptcy trustee shall convene a meeting of the debtor's creditors, at which the trustee must orally examine the debtor to ensure that the debtor is aware of is aware of potential consequences of a discharge, the debtor's ability to file a petition under a different chapter of this title, the effect of receiving a discharge, and the effect of reaffirming a debt.

3

irrevocably,'" thereby "'rais[ing] the cost of lying.'" *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (quoting *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993)). Courts invoke the doctrine at their discretion, and the "circumstances under which [it] may be invoked are probably not reducible to any general formulation of principle." *Id.* at 743. Courts generally assess three factors to determine whether applying judicial estoppel is appropriate. First, the party's later position must be "clearly inconsistent" with its previous position. *New Hampshire*, 532 U.S. at 750; *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999). Second, courts consider whether the party succeeded in persuading a court to accept its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *New Hampshire*, 532 U.S. at 750 (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982)). Third, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750.

A debtor in bankruptcy proceedings must disclose all of her assets; if she "denies owning an asset, including a chose in action or other legal claim, [she] cannot realize on that concealed asset after the bankruptcy ends." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006). A debtor who neglects to disclose a particular asset has a continuing obligation to file amended schedules disclosing all of her assets. *Id.* at 448 ("[I]f [the plaintiff] were really making an honest attempt to pay her debts, then as soon as she realized that it had been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery.").

In *Cannon-Stokes*, the debtor filed an administrative complaint against the Postal Service before she filed a bankruptcy petition. *Id.* at 447. She never disclosed her administrative complaint

4

potentially worth $300,000, and the bankruptcy court granted her a complete discharge of her $98,000 debts. *Id.* The Seventh Circuit judicially estopped her from pursuing her claim against the Postal Service because:

> The representation she made is false; she obtained the benefit of a discharge; she has never tried to make the creditors whole; now she wants to contradict herself in order to win a second case. Judicial estoppel blocks any attempt to realize on this claim for her personal benefit.

*Id.* at 449.

The facts of the instant case are nearly identical to the facts of *Cannon-Stokes*, but with one wrinkle—namely, the plaintiff in the instant action did not file her EEOC charge until after filing her bankruptcy petition. Defendants' actions giving rise to the claims that Smith brings here, however, took place prior to her filing of the bankruptcy petition, and she did not update her schedules during the pendency of her bankruptcy action. On these facts, all three judicial estoppel factors are satisfied. First, it is clearly inconsistent for her to inform the bankruptcy court that she has no "claims against third parties, whether or not you have filed a lawsuit or made a demand for payment" while simultaneously pursuing a discrimination claim before the EEOC and obtaining a right-to-sue letter during the pendency of the bankruptcy proceedings. Second, whether she intended to or not, Plaintiff clearly misled the bankruptcy court. Third, if Plaintiff successfully prosecuted her case here, she would derive an unfair advantage—namely, she would be able to recoup damages that rightly belong, at least in part,[5] to the creditors who recovered nothing in the bankruptcy proceedings.

Other courts in this district have judicially estopped plaintiffs from pursuing lawsuits in similar circumstances. In one such case the court found that judicial estoppel precluded the plaintiff

---

[5] Plaintiff seeks $100,00 in damages in this case. (Dkt. 2.) The bankruptcy court discharged $22,557.90 in Plaintiff's debts. *In re Tiffany Michelle Smith*, No. 19-21317-jra, Dkt. 14 (Bankr. N.D. Ind. Aug. 19, 2019).

from asserting harassment and discrimination claims to the extent that those claims were based on events that occurred before the filing of the bankruptcy petition. *Thompson v. Vill. of Monee*, No. 12 C 5020, 2014 WL 4175915, at *6 (N.D. Ill. Aug. 22, 2014) ("Based on the alleged frequency and overtness of the harassment Plaintiff has alleged, it is unreasonable to infer that Plaintiff was not aware that he may have claims against Defendants when he filed his petition. . . . Moreover, even if Plaintiff had simply overlooked the existence of his potential pre-petition claims against Defendants when filling in the bankruptcy schedules, he should have filed an amended Schedule B or moved to reopen the bankruptcy proceeding once he realized his mistake.").

Plaintiff contends that her failure to inform the bankruptcy court of her claims against Defendant were inadvertent and that this inadvertence should excuse her failure to disclose. Indeed, there is some support in case law for that position. *See, e.g.*, *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014) (reversing the district court's application of judicial estoppel where the plaintiff belatedly and orally disclosed her legal claim to the bankruptcy trustee, which suggested that the initial failure to disclose was inadvertent); *David v. Wal-Mart Stores, Inc.*, No. 11 C 8833, 2014 WL 5510986 (N.D. Ill. Oct. 24, 2014) (denying a motion to dismiss on judicial estoppel grounds where the plaintiff moved to reopen her bankruptcy case to schedule a previously undisclosed claim, showing a lack of subjective intent to deceive the court); *see also Ware v. Harvey Auto Credit, LLC*, No. 16 C 5691, 2017 WL 2404947 (N.D. Ill. June 2, 2017) (denying a motion to dismiss on judicial estoppel grounds where the plaintiff's decision to reopen the bankruptcy case to disclose his claim indicated a lack of subjective intent to deceive); *Van v. Ford Motor Co.,* No. 14 CV 8708, 2016 WL 1182001, at *2 (N.D. Ill. Mar. 28, 2016) ("Courts make an exception [to judicial estoppel] where an omission of a claim from the bankruptcy schedule is innocent, meaning based on poor communication with counsel or on the good faith

6

belief that the claim has no value."); *but see Escobar v. Aircraft Serv. Int'l Grp., Inc.*, No. 18 C 2308, 2019 WL 3776176 (N.D. Ill. 2019) (granting summary judgment on judicial estoppel grounds where the plaintiff never made any attempt to amend his schedules or reopen the bankruptcy matter). *Spaine* and this case are factually distinguishable in that Plaintiff never disclosed her claim to the bankruptcy court despite multiple opportunities to do so. She then had all of her debts discharged and filed suit in this Court shortly thereafter. In that way, this case is more analogous to *Cannon-Stokes*. Plaintiff's claim here alleges discrimination and hostile work environment that spanned a period of approximately two years immediately preceding her bankruptcy. (Dkt. 40 ¶¶ 17–40.) This is a sizeable claim that was central to her daily life and potentially worth more than four times the amount of her discharged debt. *Cf. Cannon-Stokes*, 453 F.3d at 448 ("It is impossible to believe that such a sizeable claim—one central to [the plaintiff's] daily activities at work—could have been overlooked when [the plaintiff] was filling in the bankruptcy schedules."); *Thompson*, 2014 WL 4175915, at *6 ("Based on the alleged frequency and overtness of the harassment Plaintiff has alleged, it is unreasonable to infer that Plaintiff was not aware that he may have claims against Defendants when he filed his petition . . . .").

The foregoing case law makes this much clear. First, bankruptcy petitioners have an ongoing obligation to disclose legal claims to the bankruptcy court, including claims that are filed during the pendency of the bankruptcy proceedings, especially if the facts giving rise to the claim occurred prior to filing the bankruptcy petition and were central to the petitioner's life. Second, subjective intent to deceive is an important factor to consider. Courts find subjective intent to deceive where the plaintiff failed to update the bankruptcy court with claims that are filed during the course of the bankruptcy proceedings. Third, once the bankruptcy court discharges debts, the debtor's failure to move to reopen the proceedings to include her later-filed claims bears on

whether she had subjective intent to deceive. Even viewing this facial challenge in the light most favorable to Smith, all of the *New Hampshire* factors are satisfied, she never disclosed her claim to the bankruptcy court, and she never sought to reopen her case. Given the pervasive nature of the harassment and hostile work environment claims she alleges and the contemporaneous nature of her EEOC and bankruptcy claims, a plausible inference is that she intended to deceive the bankruptcy court.

Even so, the Court declines to dismiss this case at this stage on judicial estoppel grounds because whether someone intended to deceive is inherently a fact-intensive inquiry. *See, e.g.*, *Pruitt v. Quality Labor Servs.*, 16 C 9718, 2018 WL 5808461 (N.D. Ill. Nov. 6, 2018) (holding an evidentiary hearing after denying summary judgment to determine whether the plaintiff intended to deceive the bankruptcy court). Although the Court can plausibly infer that she intended to deceive the bankruptcy court, it is also plausible that as a *pro se* petitioner she did not understand her obligations under the law and therefore did not intend to deceive. Because the Court must draw all reasonable inferences in her favor, the Court declines to dismiss the case at this stage on estoppel grounds. This does not preclude Defendants from raising the judicial estoppel issue at the summary judgment stage or at a hearing upon developing a factual record with respect to her intent, including her discussions with the trustee during her § 341 meeting.

Defendants also contend that Smith lacks standing. When a debtor files a bankruptcy petition, generally all of her property becomes the property of the estate. *See Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) (abrogated on other grounds by *Law v. Siegel*, 571 U.S. 415 (2014)). The debtor's property includes all of her legal and equitable interests. *See* 11 U.S.C. § 541. Once a party files a Chapter 7 petition, only the trustee for the bankruptcy estate can bring claims that previously belonged to the debtor. *Id.* A debtor can only assert claims that arose

8

before the filing of the petition in her name if the trustee abandons the debtor's claims. *Matthews v. Potter,* 316 Fed. App'x. 518, 521–22 (7th Cir. 2009).

On May 10, 2019, Plaintiff filed for Chapter 7 bankruptcy. (Dkt. 42-1 at 2.) Plaintiff filed her EEOC claim two months later. (Dkt. 40 ¶ 6.) Even if the EEOC claims were legal interests of the estate, the trustee abandoned the debtor's claims when the trustee discharged her debts. *See Williams v. Hainje*, 375 Fed. App'x. 625, 627 (7th Cir. 2010) (the dismissal of a bankruptcy case meant that the plaintiff was pursuing action on his own behalf despite his failure to disclose the pending action); *see also Cannon-Stokes*, 453 F.3d at 448 (explaining that the trustee abandoned its interest in undisclosed pre-bankruptcy claims by discharging debts of the debtor). Of course, the trustee appears not to have known about the claims here, but that is a reason for the Court to consider applying judicial estoppel upon further development of the factual record. It is not a standing issue.

## II.     Motion to Dismiss for Failure to State a Claim

Defendants move to dismiss the Second Amended Complaint under Rule 12(b)(6) for failure to state a claim. When considering a motion to dismiss for failure to state a claim, the Court must construe the complaint "in a light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff need not plead "detailed factual allegations," but the short and plain statement must "give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  A complaint must contain sufficient factual matter that when

9

"accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

    **A.**    **Background**

Smith is a 32-year-old African American female with a mixed racial background. (Dkt. 40 ¶ 7.) On June 26, 2017, AYH employed Smith as a Night Auditor/Front desk agent at a Chicago hostel. (*Id.* ¶ 17.) Between June 2017 and October 2017, Ruby Martinez, one of Smith's supervisors,[6] asked Smith about her race no less than twenty times and commented on how she doesn't "look black." (*Id.* ¶ 18.) On October 20, 2017, Martinez told Smith, "We only hire people who look like us." (*Id.* ¶ 19.)

AYH admonished Smith to be polite to co-workers and guests, even though she treated everyone with professional courtesy. (*Id.* ¶ 21.) Smith alleges that management never admonished Zachary Shearer, a white co-worker who had a history of making racially derogatory remarks. (*Id.* ¶ 22.) In September 2017, for example, Shearer asked Smith, "Are you a watermelon eater? Blacks eat watermelon a lot." (*Id.* ¶ 24.) Smith reported this and other incidents of Shearer being disrespectful to black co-workers and guests. (*Id.* ¶ 25.) Another supervisor, Reynaldo Matos, responded to Smith's complaints saying, "You don't have to tell me every little thing that happens." (*Id.*) Between September 2017 and January 2018, Shearer made several disparaging remarks to Plaintiff and other black co-workers or guests. (*Id.*) AYH did not discipline Shearer in any way. (*Id.*) After Smith's initial complaint about Shearer, Smith alleges that Matos and Paul Coley (another supervisor), constantly evaluated and over-reviewed Smith's work. (*Id.* ¶ 30.) Smith also alleges that AYH started encouraging white and Hispanic employees to bring negative information about Plaintiff to its attention. (*Id.* ¶ 27.)

---

[6] Plaintiff does not allege in the Complaint that Martinez, Matos, or Coley were supervisors. The Court infers that they were supervisors based on the allegations of the Complaint. (Dkt. 40 ¶ 33.)

10

Around July 2018, Smith and Shearer had an argument regarding Shearer's disrespectful and disparaging statements to Smith. (*Id*. ¶ 32.) After this incident, Martinez began to refer to Smith as a "trouble-maker." (*Id*.) Around the same month, Martinez told Smith she was going to terminate her employment because "you did not get along with Zach [Shearer]." (*Id*. ¶ 33.) Smith told Martinez that it would be unfair to terminate her employment since Smith made several complaints about Shearer and he never received any discipline. (*Id*.)

In January 2019, Coley met with Smith and accused her of threatening to file a lawsuit against AYH. (*Id*. ¶ 34.) On February 4, 2019, Coley sent Smith an email accusing her of continuing to give unsolicited opinions to other employees and making threats towards the organization. (*Id*. ¶ 35.) On February 7, 2019, Coley, Martinez, and Matos met with Smith. (*Id*. ¶ 36.) Coley told Smith that someone had informed Javier Bujanda, the Vice President of East Coast Operations, that Smith wanted to sue AYH. (*Id*.) Smith expressed in her email response and at the meeting that she never made any threats of legal action. (*Id*. ¶ 35.)

On April 29, 2019, Matos and Coley terminated Smith's employment ostensibly because Smith falsified her timesheet by taking a longer break. (*Id*. ¶ 40.) Smith informed Matos and Coley that other white and Hispanic employees had taken longer breaks without receiving any disciplinary action. (*Id*.) Coley promised that the other employees "would be handled," but nothing happened to these individuals. (*Id*.)

### B. Statute of Limitations

Defendants argue that Plaintiff's Title VII claims pre-dating September 29, 2018, are time-barred. A plaintiff must file a Title VII charge of employment discrimination with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Roney v. Ill. Dept. of Transp*., 474 F.3d 455, 460 (7th Cir. 2007). If discrete wrongful acts cause continuing

harm, then the 300-day period runs from the date of the last wrongful act that is part of the continuing harm. *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839–40 (7th Cir. 2014).

Plaintiff alleges acts spanning at least two years that together constitute a single continuing harm. Between June 2017 and October 2017, Martinez asked about Plaintiff's race numerous times and commented that "we only hire people who look like us." (Dkt. 40 ¶ 18.) From September 2017 to January 2018, Plaintiff's co-worker said disparaging comments to her and other black co-workers or guests, but AYH did not discipline the co-worker. (*Id.* ¶ 25.) In July 2018, Plaintiff and the same co-worker had an argument regarding the coworker's disparaging statements to Plaintiff, and Martinez considered terminating her employment. (*Id.* ¶¶ 32, 33.) Between January and February 2019, Martinez, Coley, and Matos accused Plaintiff of threatening legal action against AYH. (*Id.* ¶ 36.) These acts are part of the "same actionable hostile work environment practice." *Morgan,* 536 U.S. at 120. Each alleged act has at most a six-month gap until another such act occurred. *Cf. Lucas*, 367 F.3d at 727 (a three-year gap between alleged hostile acts was not part of the same hostile work environment claim). The alleged acts between June 2017 and January 2019 are part of a single claim, so they are not time-barred because Plaintiff filed this claim within 300 days of the final acts constituting the continuing harm.

### C. Exhaustion

Defendants also move to dismiss Plaintiff's Title VII gender and color discrimination claims because Plaintiff failed to administratively exhaust these claims. In Count I, Plaintiff mentions discrimination based on her "color and gender." (Dkt. 40 ¶ 46.) A plaintiff filing Title VII claims in federal court may only bring claims that she included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004–05 (7th Cir. 2019). Here, Plaintiff

12

did not allege sex and color discrimination claims in the EEOC charge. (*See* Dkt. 40-2 (listing discrimination based on race, retaliation, and national origin, but not sex or color)). A sex discrimination claim is not "like or reasonably related" discriminatory acts alleged in the Second Amended Complaint, so the Court dismisses that claim for lack of exhaustion. Her color discrimination claim appears identical to her race discrimination claim, so the Court will not dismiss that allegation.

### D. Counts I & II: Racial Discrimination

Counts I and II allege racial discrimination in violation of Title VII and 42 U.S.C. § 1981. (Dkt. 40 ¶¶ 45–49.) In general, the same standards govern intentional discrimination claims under Title VII and § 1981. *Steinhauer v. DeGolier,* 359 F.3d 481, 483 (7th Cir. 2004). A racial discrimination claim requires allegations that (1) the plaintiff is a member of a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse action, and (4) another similarly situated individual who was not a member of the plaintiff's protected class received more favorable treatment. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). A plaintiff successfully pleads an adverse employment action in violation of Title VII by detailing events leading to an adverse action, identifying at least some of the guilty parties, including their races, and providing relevant dates. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002).

Plaintiff alleges that as an African-American, she is a member of a protected class. She explains that her job performance met AYH's reasonable expectations, and that AYH treated Zachary Shearer, a white co-worker, more favorably. She details facts leading up to her termination, identifies some of the guilty parties, and provides relevant dates for when the actions occurred. From June 2017 to February 2019, Plaintiff alleges that Defendants constantly

13

commented on her race, ignored Plaintiff's complaints about a co-worker making racial comments, threatened to terminate her employment, and falsely accused her of threatening to file a lawsuit. (*See* Dkt. 40 ¶¶ 18–39.) A few months later, Defendants terminated Plaintiff's employment. (Dkt. 40 ¶¶ 40.) Plaintiff has sufficiently alleged racial discrimination claims in Counts I and II.

### E. Retaliation

In Count II, Plaintiff also mentions "discrimination for engaging in protected activities," which suggests a retaliation claim. To state a retaliation claim, Plaintiff must allege (1) that she engaged in statutorily protected expression, (2) that she suffered an adverse employment action, and (3) a causal link between the protected expression and the adverse action. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). Title VII "forbids retaliation against anyone who 'has opposed any practice made an unlawful employment practice by [Title VII].'" *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 314 (7th Cir. 2011) (quoting 42 U.S.C. § 2000e-3(a)). An employment action is materially adverse if it would dissuade a reasonable employee from engaging in the protected activity. *Poullard v. McDonald*, 829 F.3d 844, 858 (7th Cir. 2016).

Count II alleges that "similarly situated employees who did not share Plaintiff's race and color were treated more favorably than Plaintiff," but does not state what adverse employment action constituted retaliation. (Dkt. 40 ¶ 53.) The only time Plaintiff alleges engaging in a statutorily protected activity is when she complained to Matos about a co-worker's comments and behavior. (*Id*. ¶ 30) After this initial complaint, Plaintiff alleges that management constantly evaluated and over-reviewed her work. (*Id*.) Although over-reviewing her work may inconvenience Plaintiff, this does not rise to the level of a "humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment" that is necessary to be a materially adverse action. *Nichols v. S. Ill. University-Edwardsville*, 510 F.3d 772,

780 (7th Cir. 2007); *see also Smart v. Ball State Univ.*, 89 F.3d 437, 442 (7th Cir. 1996) (holding that negative performance evaluations alone did not constitute adverse employment action). Furthermore, Plaintiff does not specifically allege in the Second Amended Complaint that her termination resulted in response to protected activity. (*See* Dkt. 40.) Plaintiff fails to allege with specificity the elements of a retaliation claim, so to the extent that Count II alleges a retaliation claim, that claim is dismissed.

### F. Hostile Work Environment

Count III alleges that Defendants subjected her to a hostile work environment, in violation of Title VII and § 1981. To state a claim for a hostile work environment, Plaintiff must allege that (1) she was subjected to harassment, (2) the harassment was based on her protected identity, (3) the harassment was severe or pervasive so as to alter conditions of employment creating a hostile or abusive work environment, (4) and there is a basis for employer liability. *See Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). To demonstrate harassment "that rises to the level of a statutory violation, the plaintiff must prove that his or her work environment was both subjectively and objectively offensive; one that a reasonable person would find hostile or abusive and one that the victim in fact did perceive to be so." *Cerros v. Steel Technologies, Inc.*, 398 F.3d 944, 947 (7th Cir. 2005). Courts evaluate the totality of the circumstances in determining whether an environment is hostile or abusive. *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993). Factors to consider include the frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating or merely an offensive utterance, and whether it unreasonably interferes with the employee's work performance. *See Alexander v. Casino Queen*, 739 F.3d 972, 982 (7th Cir. 2014). An employer is liable for a hostile work environment claim if the plaintiff's supervisor created a hostile work environment, or if a co-

15

worker created the hostile work environment and the employer was "negligent either in discovering or remedying the harassment." *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006) (quoting *Mason v. S. Ill. Univ.,* 233 F.3d 1036, 1043 (7th Cir. 2000)).

Plaintiff alleges that the Defendants harassed her because of her race. (Dkt. 40 ¶ 62.) She also alleges that her supervisors admonished her more than non-black coworkers who acted unprofessionally. (*Id.* ¶¶ 21–25.) Defendants ignored her complaints about a coworker making disparaging comments towards her, black coworkers, and black guests. (*Id.*) Defendants constantly watched her and scrutinized her work, threatened to fire her, and falsely accused her of threatening the company with legal action. (*Id.* ¶¶ 30, 33, 34, 35.) Having her complaints of discrimination dismissed and having further complaints discouraged through intimidation could have meaningfully impacted her work performance. Moreover, potential harassment is more severe when, as here, the conduct came from supervisors. *See Dandy v. United Parcel Service, Inc.*, 388 F.3d 263, 271 (7th Cir. 2004). Furthermore, it is premature to conclude just how abusive her work environment is at this stage. The Court only needs to determine whether such behavior could plausibly be abusive. *See Huri*, 804 F.3d at 834. The allegations here satisfy that threshold. Thus, the Court denies the Motion as to the hostile work environment claim in Count III.

### G. Allegations About Lisa Zhu

Plaintiff does not allege how Lisa Zhu committed or contributed to any discriminatory actions against Plaintiff. In fact, Plaintiff does not mention Zhu in the Second Amended Complaint except to say that she is a white woman who was employed by AYH. (*See* Dkt. 40 ¶ 14.) Plaintiff does not allege any action on Zhu's part at all. Thus, Plaintiff does not provide Zhu with "fair notice" of any claim according to Rule 8(a). *Swierkiewicz*, 534 U.S. at 514. The Court dismisses all claims against Zhu.

**CONCLUSION**

For the aforementioned reasons, the Court grants in part and denies it in part Defendants' Motion to Dismiss. [41] Specifically, the Court dismisses Plaintiff's claim of sex discrimination under Title VII for failure to exhaust administrative remedies. The Court also dismisses the retaliation claims, the state law claims, and claims against Lisa Zhu for failure to state a claim. Because this was Plaintiff's third attempt at stating these claims, the dismissals are with prejudice. The Court denies the Motion to Dismiss in all other respects. Prior to any dispositive motion briefing, the Court will conduct an evidentiary hearing regarding Plaintiff's intent before the bankruptcy court.

_____
Virginia M. Kendall
United States District Judge

Date: November 9, 2020